## Case No. 8,415.

### LIVINGSTON v. JORDAN.

[Chase, 454; [1] 10 Am. Law Reg. (N. S.) 53.]

Circuit Court, D. South Carolina. June Term, 1869.

INFANCY—ESTATE OF INFANT — SALE — PROCHEIN AMI — CIVIL WAR — JURISDICTION OF STATE COURT OVER ONE RESIDING IN LOYAL STATE.

1. No person has a right to intervene as a volunteer for a minor child, and make a contract for a sale of a minor's estate.

2. If such a volunteer has made such a contract. a court of equity afterwards has not jurisdiction to ratify it.

3. The courts of a state forming part of the Confederate States had no jurisdiction during the Civil War over parties residing in states which adhered to the national government.

4. As between parties residing in South Carolina and parties residing in states adhering to the national government, the courts of South Carolina could have no jurisdiction while the war continued.

5. A party professing to act as prochein ami for infants resident in Maryland, applied to a court of equity of South Carolina to ratify a sale made by him of the real estate of the infants lying in South Carolina. The application was made in February, 1861. The application was referred to the master, and proceedings were not finally terminated until April, 1862, when the sale was ratified, and subsequently the purchaser paid the purchase money in Confederate currency. The professed prochein ami was stepfather of the infants, and was as well as they resident in Maryland during the whole war. On the restoration of peace they repudiated the whole transaction, and brought ejectment for the land. *Held*, that the proceedings before the South Carolina courts were void, as to them, and that they must recover.

This was an action of ejectment to recover the premises described in the pleadings. Mary S. Livingston (formerly McRa) and Julia M. McRa were entitled under the will of their grandfather to the Wateree plantation. Mary S. and Julia McRa were minors, living in Baltimore. On February 12, 1861, Henry Oehlrich, their prochein ami, filed his petition in the court of equity for Sumter county, setting forth the contract for the sale of the plantation, the deposit with solicitor of petitioners of the cash portion, and praying confirmation of sale. This petition was referred to commissioner in equity, who reported on March 20, 1861, that Mary S. McRa had come of age; that Julia M. McRa was over eighteen years old, when according to the laws of Maryland as in evidence before the commissioner, the guardianship of female infant ceases. The report further recommended confirmation of sale. A decretal order was made by the court, March 29, 1861, confirming the report and ordering the commissioner, on execution of bonds and mortgage for the credit portion, by the purchaser, to execute a deed

1 [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

of the property. In April, 1862, the commissioner in equity reported that the purchaser had not executed the bonds as required by the decree, and further time was granted by the court, and on October 29, 1862, the purchaser complied, and the commissioner in equity executed to him a conveyance of the property. The bonds, as they fell due, were paid in Confederate currency, and by an order of court invested in Confederate bonds. The cash portion was deposited by the solicitor in banks, and now lost. Subsequently the purchaser sold and conveyed the premises to the defendant.

Porter & Conner, for plaintiff.

I. There was no contract of sale, for infants could not contract, and there was no one authorized to contract for them. Sale of real estate of infants can only be effected through court of equity. Court will only act with the greatest precaution, and when sale is for manifest advantage of infant. Otherwise jurisdiction is liable to the most obvious abuse. Pearse v. Killian, McMul. Eq. 234; Bulow v. Buckner, Rich. Eq. Cas. 401. Defendant relies on decree of court, but taking title under the court, he is bound at his peril to see that court had jurisdiction, and that proceedings were regular. The proceedings were irregular, and parties not properly before the court, and of course not bound by the decree. The petition is by H. Oehlrich, as next friend and guardian in Maryland. We object: 1. That petition is not signed or sworn to by next friend. 2. That next friend must reside in the state, so as to be within the control and reach of the court. 3. That it prays sale of real estate and payment of funds to guardians residing out of the state, a thing the court will not permit. 2 Daniell, Ch. Pr. 100; 2 Madd. Ch. Pr. 375; Ex parte Copeland, Rice, Eq. 69. 4. That the evidence before the commissioner showed that the infants were over eighteen years; that the guardian was appointed under laws of Maryland, and that he was no longer guardian under laws of that state, and never had been appointed guardian under laws of South Carolina. The proceedings were not only irregular but were fatally defective. The only parties to be bound by the decree were not legally before the court. The petition was signed by no one but the solicitor who filed it. He was not appointed by any one authorized to act for or bind the infants. Even if any semblance of authority existed for the institution of the proceeding, it terminated as to Mary S. McRa three days after petition was filed, for she then came of age. And it terminated as to Julia McRa, March 6, 1862, when she came of age. In April, 1862, when commissioner in equity reported that purchaser had failed to comply with decree of court it was in evidence before the court that both infants had come of age. Any previous authority to represent them had expired. No new authority had been given. All subsequent proceedings were null and void. The only ground of jurisdiction, the infancy of the parties, had ceased. Tested by the established principles of equity the proceedings were unauthorized and invalid, the parties in interest never properly before the court, and the decree not binding upon them.

II. But even if the proceedings before the court had been regular and legal, and the solicitor had had authority to bind the parties at the inception of the suit, the war suspended his authority and suspended the jurisdiction of the court. The petitioners were alien enemies. There was no persona standi in judico; "absolute suspension of the right, and prohibition to exercise it, exist during war by the law of nations." Griswold v. Waddington, 16 Johns. 468.

CHASE, Circuit Justice (charging jury). This is an action of trespass upon the case to try title. There is very little in it for you to pass upon. The question of fact lies within a very narrow compass. The only question of importance in the case is a question of law. It is very clear that this contract made between Mr. Moses and Mr. Robertson did not bind the plaintiffs. It was a contract without authority from them. No person has a right to intervene as a volunteer for a minor child, and make a contract for the sale of a minor's estate. This is so clear that it needs no argument. If, however, as apparently in this case, a person does intervene and make such a contract, it may become binding by subsequent assent of the parties on arriving at full age, or through proper proceedings in a court of equity.

There is no allegation in this case, that we have heard, of any such subsequent consent of these parties. You have heard the testimony of Chief Justice Moses. He stated distinctly there was no intercourse between him and these minor children in relation to this contract. It was made solely at the instance of their mother and stepfather. So far as their consent goes, therefore, it may be laid out of the case. The next question is whether there is any jurisdiction in a court of equity of the state of South Carolina to make a decree confirming the contract, or for the sale of the minor's estate. Upon that point we entertain very serious doubts. Undoubtedly an infant may bring suit by next friend in a court of equity; and the court has jurisdiction in such a suit to make an order giving authority to sell the estate of the infant. There is no question upon that point. In this case, however, the suit was brought by the stepfather, representing himself as next friend of the minors; but he himself resides in Maryland, beyond the jurisdiction of the

court in which the suit was brought. Though represented as the guardian of the minors, he was not such in fact. He had ceased to be the guardian of one under the laws of Maryland for more than two years, and of the other for nearly two. And one of the heirs became of age, according to the laws of South Carolina, within four days after the suit was brought, and the other long before the final decretal order under which the defendant claims title; and neither was ever brought formally into court.

As we have already said, we doubt upon the question of jurisdiction; but for the purposes of this case will rule that jurisdiction to confirm this contract made in behalf of the minors, or to pass the final decretal order under which the title was conveyed, did not exist. The defendant, if dissatisfied, may move in arrest of judgment, or for a new trial.

Under this ruling, gentlemen, your verdict must be for the plaintiff; for, if there was no jurisdiction in the court, the defendant can not protect himself by its decree.

It is proper to say, further, that although we have put this case, for the present, upon the absence of jurisdiction in the state court to confirm or order the sale, there is another objection to the defendant's title equally fatal.

The jurisdiction of the state court over the plaintiffs, whatever it was, terminated when the Civil War broke out. Upon that point we entertain no doubt. As between parties residing in the state of South Carolina, and parties residing in the states which adhered to the national government, between whom war made intercourse impossible, there could be no jurisdiction in the courts of South Carolina while the war continued, by which the rights of non-residents could be injuriously affected. This ruling, indeed, applies only to the orders made during the war; it is decisive, however, of this case.

We charge you, gentlemen, that the courts of South Carolina had no jurisdiction of these plaintiffs, and no jurisdiction to make any order prejudicial to their rights during the war. These instructions, gentlemen, leave nothing for your determination but the question of damages. The measure of damages must be the amount of net profits made by the defendant from the plantation. The defendant in this case is Mr. Jordan, not the original purchaser, Mr. Robertson. If you have heard any evidence of profits made by him, you will give damages to that extent.

The jury returned a verdict for plaintiff, but gave no damages. [Damages one cent, on which the court entered judgment, and issued a writ of habere facias possessionem.] [2]

───────────────

[2] [From 10 Am. Law Reg. (N. S.) 53.]